Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LUNA RESIDENTIAL III, LLC<br><br>RECURRIDO<br><br><br>V.<br><br><br>AMALIA CARDONA FUSTER, T/C/C AMALIA EUGENIA CARDONA FUSTER, JULIO A. ORTIZ MCWILLIAMS Y LA SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS<br><br>PETICIONARIOS | TA2026CE00561 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.: CG2023CV02254<br><br>Sobre: Cobro de Dinero Ordinarios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece ante nos, la señora Amalia Eugenia Cardona Fuster; el señor Julio A. Ortiz Mcwilliams; y la Sociedad Legal de Bienes Gananciales compuesta por ambos, (en adelante, en conjunto, "los peticionarios"). Solicitan nuestra intervención para que dejemos sin efecto lo resuelto en la *"Minuta"* notificada el 24 de abril de 2026 que recoge lo expresado en la Vista celebrada el 22 del mismo mes y año. En específico, el foro primario resolvió que el asunto de la prescripción extintiva ya fue adjudicado en sus méritos en la "*Sentencia Parcial"* notificada el 5 de septiembre de 2025.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* presentado y con ello *revocamos* la determinación recurrida.

**I.**

El asunto en controversia tiene su origen en la *"Demanda"* presentada el 11 de julio de 2023 por Luna Residential. La referida parte expuso, que es tenedora de buena fe de un pagaré que los peticionarios

otorgaron en el año 2005 a favor de Master Mortgage Corp. Aseveró, que el último pago efectuado por los peticionarios data del 1 de julio de 2012 y que a la fecha éstos le adeudan la suma principal de $151,662.27; más intereses; cargos por demora; costas; gastos; y honorarios de abogado. Ante ello, solicitó al foro recurrido que les ordene a los peticionarios pagar las cuantías adeudadas.

En respuesta, el 27 de octubre de 2023, los peticionarios presentaron *"Contestación a Demanda."* En esencia, aceptaron que se otorgó un pagaré a favor de Master Mortgage Corp. en la fecha indicada en la *"Demanda."* Sin embargo, alegaron en la afirmativa que Luna Residential no es tenedora de buena fe dado que la deuda es inexistente. Añadieron, que el 20 de febrero de 2015 FirstBank los liberó del pago de la aducida responsabilidad económica.

Cabe señalar, que el 28 de mayo de 2024, los peticionarios presentaron una "*Demanda Contra Terceros."* Figuraron como terceros demandados[1] los señores Miguel Antonio Merced Torres; la señora Yaidy N. Cruz Cotto; Credit Management Consultant, Inc.; y FirstBank. Relataron, que el 21 de abril de 2006, Credit Management Consultant Inc., adquirió en pública subasta sin su conocimiento el bien en disputa. Adujeron que, a pesar de dicha adquisición y a sabiendas de su existencia, FirstBank les indujo a otorgar un "*Acuerdo de Modificación de Préstamo"* cuyo pago comenzó el 1 de julio de 2006 y debió culminar el 1 de mayo de 2020.

Tras la ocurrencia de esto, sostuvieron que el 7 de agosto de 2009 el señor Merced Torres y la señora Cruz Cotto compraron la referida propiedad a Credit Management. Agregaron, que en este último negocio jurídico se pactó que Credit Managment retendría la cantidad de $171,137.45 para saldar la hipoteca que gravaba la propiedad, lo cual aducidamente no se realizó. Ante tales alegaciones, esgrimieron que FirstBank incurrió en dolo contractual al no informarles que la propiedad había sido adquirida en pública subasta al momento en que suscribieron el

---

[1] El 14 de noviembre de 2024, el foro primario declaró en rebeldía a los terceros demandados: Yaidy Norah Cruz Cotto, Credit Management Consultant, Inc. y Miguel Antonio Merced Torres.

"*Acuerdo de Modificación de Préstamo.*" Al culminar sus argumentos, sostuvieron que los terceros demandados eran solidariamente responsables de las cantidades reclamadas en la *"Demanda."*

Por su parte, el 21 de agosto de 2024, FirstBank contestó las alegaciones en su contra. En suma, negó las aseveraciones principales y adujo que los peticionarios tenían una deuda personal a su favor la cual fue modificada a solicitud y bajo el consentimiento de éstos. Además, expuso que el alegado pagaré fue adquirido por FisrtBank y en agosto de 2021 se endosó a favor de Luna Residential.

Así las cosas, en el año 2024, los peticionarios y Luna Residential presentaron mociones dispositivas. Los primeros, solicitaron la desestimación de la acción entablada en su contra a tenor del fundamento de prescripción extintiva. Mientras que Luna Residential solicitó la disposición sumaria del pleito a su favor, bajo el argumento de que los peticionarios asumieron mediante pagaré una obligación económica que al presente adeudan y deben de satisfacer.

Así pues, comenzado el descubrimiento de prueba y celebradas varias vistas, el 26 de diciembre de 2024, el foro primario notificó la *"Minuta"* de la *"Vista Procesal"* celebrada el 17 del mismo mes y año. Surge de dicha *"Minuta"* que el tribunal de instancia les concedió a las partes un término a vencer el 31 de enero de 2025 para que presentaran nuevamente sus respectivas mociones dispositivas.[2]

Ante ello, el 30 de enero de 2025, Luna Residential presentó *"Moción en Cumplimiento de Orden."* En síntesis, reiteró su previa solicitud de sentencia sumaria. Reafirmó, que desde el 1 de julio de 2012, los

---

[2] En lo que respecta a FirstBank, el 31 de enero de 2025, éste presentó *"Moción de Sentencia Sumaria,"* mediante la cual peticionó que se dispusiera sumariamente del reclamo incoado en su contra. En consecuencia, solicitó la desestimación de la aludida causa de acción por dejar de exponer una reclamación que justifique la concesión de un remedio, según lo dispuesto en la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Reafirmó que, el 5 de agosto de 2021, la obligación prestataria fue vendida a Luna Residential. Añadió, que la copeticionaria, Amalia Cardona Fuster, tenía conocimiento de la venta en pública subasta del inmueble objeto de litigio, puesto que Credit Management entabló en su contra un pleito de ejecución de hipoteca. Agregó, que contrario a lo aducido por los peticionarios, fue la señora Cardona Fuster quien le ocultó la situación de la aludida propiedad en el momento en que FirtsBank suscribió el "*Acuerdo de Modificación de Préstamo.*" Por consiguiente, argumentó que los peticionarios carecen de argumentos válidos para fundamentar sus alegaciones de dolo contractual.

peticionarios han dejado de pagar las mensualidades expuestas en el pagaré, por lo cual, adujo que al presente la obligación económica asumida por éstos está vencida y es exigible. En consecuencia, peticionó al foro recurrido que ordene a los peticionarios que paguen las cuantías adeudadas.

Por su parte, el 31 enero de 2025, los peticionarios presentaron *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción."* Argumentaron, que de conformidad al *"Acuerdo de Modificación de Préstamo,"* los pagos obligaciones comenzaron a requerirse a partir del 1 de julio de 2006 y vencieron el 1 de mayo de 2020. Así pues, según esgrimieron, en o posterior al 21 de julio de 2021, FirstBank endosó y cedió el *"Pagaré Hipotecario"* cuando este ya había vencido el 1 de mayo de 2020. Agregaron, que surge de la documentación que obra en el Departamento de Estado, que Luna Residential se constituyó legalmente el 21 de julio de 2021. Añadieron, que no fue hasta el 11 de julio de 2023 que Luna Residential les reclamó el pago de la deuda.

A su vez, sostuvieron, que a pesar de que presuntamente durante el periodo que comprende de 11 de marzo de 2021 a marzo de 2023, Luna Residential les envió comunicaciones extrajudiciales, argumentaron que estas incumplen con los requisitos necesarios para lograr interrumpir el término prescriptivo de la reclamación. Por consiguiente, aseveraron, que la presente causa de acción está prescripta por radicarse en fecha posterior al 1 de marzo de 2023 cuando ya había vencido el término aplicable de tres (3) años, según dispuesto en la Ley de Transacciones Comerciales, Ley Núm. 208-1995, según enmendada, 19 LPRA sec. 401 et seq.

En reacción, el 13 de febrero de 2025, Luna Residential presentó *"Réplica a Moción en Reiteración."* Adujo, que de la evidencia documental que obra en autos se puede concluir que había realizado múltiples gestiones para lograr el pago de las sumas adeudadas; las cuales tuvieron

el efecto de interrumpir el término prescriptivo de la reclamación. Arguyó, que remitió comunicaciones extrajudiciales a las últimas direcciones conocidas de los peticionarios, por medio de las cuales les informó a éstos sobre la deuda y las opciones disponibles para satisfacer la misma. De otra parte, alegó que el petitorio de desestimación incumple con las Reglas de Procedimiento Civil. A tenor de las aseveraciones expuestas, solicitó al foro recurrido que declarara *Sin Lugar* la *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción."*

En atención de ello, el 5 de septiembre de 2025, el foro primario notificó una *"Sentencia Parcial."* Mediante esta, declaró *No Ha Lugar* la *"Moción de Sentencia Sumaria,"* presentada por FirstBank y la "*Moción en Cumplimiento de Orden,"* presentada por Luna Residential. Sobre lo anterior, razonó que existen hechos materiales en controversia que necesitan dirimirse en una vista en su fondo. De igual modo, declaró *No ha Lugar* la *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción,"* presentada por los peticionarios. Al respecto, determinó lo siguiente: "**entendemos que al momento no estamos en posición de dilucidar la moción de desestimación presentada por la parte demandada, toda vez que parte de las controversias aquí esbozadas son medulares para dictar una determinación al respecto**."

En el mismo dictamen, el tribunal de instancia adjudicó una de las reclamaciones entabladas por los peticionarios en contra de FisrtBank. Sobre el particular, el referido tribunal dispuso lo siguiente:

> No existiendo razón alguna para posponer dictar la presente Sentencia Parcial, en cuanto a que FirstBank no incurrió en fraude al momento de realizar la modificación del pagaré en controversia, hasta la finalización total del pleito, se dicta la misma de conformidad con lo antes esbozado, y se ordena su registro conforme la Regla 42.3 de las de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V R. 42.3. Esta Sentencia Parcial se dicta sin especial imposición de costas, gastos y honorarios.

A su vez, el foro primario esbozó los siguientes hechos materiales incontrovertidos y en controversia:

**HECHOS ESENCIALES NO CONTROVERTIDOS:**

1. El 15 de febrero de 2005, se otorgó el pagaré a favor de Master Mortgage Corporation.

2. En este se estableció que los deudores estaban sujetos a pagar a Master Mortgage Corporation, o a su orden, la suma principal de $168,300.00 con intereses sobre el balance insoluto de principal, desde la fecha de este Pagaré hasta su pago, a razón del 6.50% por ciento anual. El principal e intereses serán pagaderos en o en cualquier lugar que el tenedor de este Pagaré indique por escrito, en plazos mensuales y consecutivos de $1,063.77, en el primer día de cada mes, comenzando el primero (1) de abril, 2005, y un pago final de $123,181.06 evidenciada por el presente, excepto que la deuda restante, si no ha sido pagada antes, quedará vencida y pagadera en el día primero de marzo de 2020.

3. El pagaré está sujeto a recargos por demoras equivalentes al 5.00% de la suma de los pagos con atrasos de 10 días calendario de la fecha de vencimiento; y una cantidad equivalente al 20% de la suma original del principal por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial.

4. El 21 de enero de 1999, se presentó el pleito H CD 1999-0026 en contra de la señora Amalia Cardona Fuster y el señor Raúl López López, su entonces esposo.

5. En virtud de éste, en el asunto H CD99-0026 el 20 de abril de 2006, se ejecutó en pública subasta el bien inmueble que gravaba el pagaré en conjunto con la hipoteca que da pie a esta controversia.

6. La propiedad fue adquirida por Credit Management Consultant, Inc., en Pública Subasta por el valor de $10,000.00.

7. La señora Amalia Cardona Fuster sometió una moción por derecho propio en el caso HCD 99-0026 el 24 de abril de 2006.

8. El señor Julio Ortiz McWilliams sometió una moción por derecho propio en el caso HCD 99-0026 el 24 de abril de 2006.

9. De igual forma, el 2 de mayo de 2006, en conjunto, el señor Julio Ortiz McWilliams y la señora Amalia Cardona Fuster sometieron una moción en el asunto HCD 99 0026.

10. El 28 de junio de 2006, la parte demandada realizó un Acuerdo de Modificación de Préstamo con FirstBank del pagaré en controversia.

11. El 7 de agosto de 2009, la propiedad fue adquirida por los esposos Miguel Antonio Merced Torres y Yaidy Norah Cruz Cotto por el precio de $190.000.00.

12. A la fecha de la compra de los esposos Miguel Antonio Merced Torres y Yaidy Norah Cruz Cotto, subsistía el gravamen de hipoteca a favor de Master Mortgage Corp.

13. Credit Management Consultant Inc., se comprometió a retener la cantidad de $171,037.00 para el pago de la hipoteca que garantizaba el pagaré en controversia.

14. El 10 de octubre de 2014, Tribunal Federal confisca el bien inmueble del Condominio en Islabella, del señor Miguel, debido a un asunto criminal dilucidado en la corte federal.

15. El 10 de octubre de 2014, FirstBank demandó a las partes en Ejecución de Hipoteca. Caso civil ECD2014-1182.

16. El 3 de noviembre de 2014, se presentó un asiento en el Registro de la Propiedad por anotación preventiva de demanda del Pleito E CD2014-1182.1

17. El 20 de febrero de 2015, FirstBank presentó una solicitud de Desistimiento.

18. El 14 de Julio de 2015, el Tribunal federal emite la orden final de confiscación.

19. El 11 de enero de 2019, se canceló la hipoteca en el Tribunal Federal del pagaré que hoy se encuentra en controversia en este asunto.

20. El 21 de julio de 2021, Luna Residential III LLC fue incorporada.

21. LUNA es una corporación organizada de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, con autoridad para demandar, cuya dirección postal es Citi Tower 252 Ponce de León Avenue, Floor 20, San Juan, Puerto Rico, 00918, cuya dirección física es Citi Tower 252 Ponce de Leon Avenue, Floor 20, San Juan, Puerto Rico, 00918, su teléfono es el (212)-262-0005 y su número de seguro social patronal es el […].

22. El 5 de agosto de 2021, FirstBank transfirió su título, interés, derechos y obligaciones sobre el pagaré hipotecario en controversia en la presente demanda, número 185824, a nombre de Amalia Cardona Fuster y Julio McWilliams a Luna residential III LLC. 22 23.

23. El 1 de octubre de 2021, Planet Home Lending envió una comunicación en la cual alegó que le fue transferido el pagaré objeto de controversia.

24. Planet Home Lending envió 57 comunicaciones a los señores Amalia Cardona Fuster & Julio Ortiz-McWilliams solicitando el pago de un préstamo hipotecario.

25. Según admitido en la Contestación a la Demanda la dirección física de la parte demandada es 29 Harbor View, Humacao, PR. De igual forma, son reconocidas en este escrito por la parte demandada como direcciones postales la dirección 436 Ave. Hostos, San Juan, PR 00918 y Urb. La Serranía, Calle Flamboyán 158, Caguas, PR 00725.

**HECHOS ESENCIALES EN CONTROVERSIA:**

1. Previo a la ejecución de la subasta hubo o no, una sustitución de rango entre Credit Management Consultant Inc. y FirstBank.

2. En qué circunstancias vendió el bien Credit Management Consultant Inc., a los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto.

3. Si Credit Management Consultant Inc., realizó el pago de la hipoteca según se obliga en la Hipoteca número 65 de compraventa otorgada por Miguel Merced Torres y Yaidy Norah Cruz Cotto.

4. Si los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto realizaron los pagos del pagaré -en ese momento gravado por una hipoteca- en controversia directamente a FirstBank.

5. De haber realizado los pagos, ¿hasta que fecha realizaron estos los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto?

6. ¿Hubo algún requerimiento de pago por parte de FirstBank a los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto?

7. ¿Qué acciones tomó FirstBank con los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto? Si alguna…

8.    Si FirstBank aceptó o no como acreedor en alguna circunstancia la sustitución de los deudores originales por los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto.

9.    Si existe una reclamación de los señores Miguel Merced Torres y Yaidy Norah Cruz Cotto en contra de Credit Management Consultant Inc. por incumplimiento de lo pactado en la Escritura número 65.

10.   ¿Desde que fecha el préstamo estuvo en incumplimiento y vencido?

11. En qué condiciones se le vendió el pagaré a Luna Residential III LLC.

12.   ¿Qué relación guarda Planet Home Lending con Luna Residential III LLC?

13. Si existe un contrato de cesión de pagaré que estipule las condiciones en las cuales fue cedido el pagaré.

14.   Si el pagaré fue vendido bajo la impresión de que estaba sujeto a un gravamen hipotecario.

Así las cosas, el 24 de abril de 2026, el tribunal de instancia notificó la *"Minuta"* que hoy es objeto de revisión. En lo pertinente a la solicitud de desestimación por prescripción el referido tribunal dispuso lo siguiente:

Hace constar el tribunal que se dictó una Sentencia Parcial el 5 de septiembre de 2025, en la cual se declaró no ha lugar la Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción presentada por la parte demandada. El asunto está resuelto y el término para recurrir ya transcurrió. Los demandados firmaron un pagaré y determinado que la acción no está prescrita, permanece la responsabilidad de estos.

En la misma fecha, oportunamente los peticionarios presentaron *"Moción Urgente en Solicitud de Reconsideración a Determinación Judicial en Vista Celebrada el 22 de abril de 2026,"* la cual fue declarada *No Ha Lugar* por el foro recurrido en la aludida fecha de 24 de abril de 2026. El tribunal primario esbozó las siguientes expresiones: "El asunto fue atendido y adjudicado en septiembre de 2025. Se emitió sentencia parcial y el término, en derecho, para solicitar reconsideraci[ó]n transcurrió, sin haber ejercido el derecho a la determinación del Tribunal."

Aun en desacuerdo, el 7 de mayo de 2026, los peticionarios presentaron ante este Tribunal un recurso de *certiorari*. Mediante este, expusieron el siguiente señalamiento de error:

Erró y abusó de su discreción el foro de instancia al determinar que en la Sentencia Parcial emitida por el Tribunal el 5 de septiembre de 2025 se declaró no ha lugar la defensa de prescripción presentada por la parte demandada y determinando que el asunto está resuelto y el término para recurrir ya había transcurrido.

En igual fecha, los peticionarios presentaron *"Moción Urgente en Auxilio de Jurisdicción y Solicitud de Paralización de Vista del 13.05.26."* El mismo día, este Tribunal emitió y notificó una *"Resolución"* en la que declaramos *No Ha Lugar* la referida solicitud de paralización. A su vez, le concedimos a Luna Residential el término de diez (10) días para expresarse con relación al auto de *certiorari* presentado por los peticionarios.

En cumplimiento de ello, el 14 de mayo de 2026, Luna Residential presentó *"Oposición a Expedición de Certiorari."*

Con el beneficio de la comparecencia de las partes, procedemos a esbozar el marco jurídico aplicable al caso ante nuestra consideración.

**II.**

**A.      Recurso de Certiorari:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Alio v. Santiago Chardón y otros*, 2026 TSPR 113; *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en

casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ___ (2025), delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es

la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación resulta irrazonable. *íd*. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**III.**

Los peticionarios argumentan que en la *"Sentencia Parcial"* el foro primario no dispuso de forma final de su defensa de prescripción, puesto que determinó que al momento no estaba en posición de dilucidar la *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción."* Sostienen, que tal razonamiento les indujo a entender que el foro recurrido "había dejado la consideración y decisión sobre dicha moción de desestimación para análisis y determinación posterior." Por consiguiente, arguyen que la resolución recurrida es arbitraria dado que impide que su defensa de prescripción sea examinada en sus méritos.

Por su parte, Luna Residential aduce que los peticionarios pretenden relitigar un asunto resuelto en la *"Sentencia Parcial,"* la cual goza de finalidad y firmeza. Entiende, que los peticionarios carecen de fundamentos para reabrir términos vencidos cuando la *"Sentencia Parcial"* fue dictaminada hace ocho (8) meses.

Evaluados los argumentos de las partes y la totalidad del expediente digital del presente caso, determinamos *expedir* y *revocar* la determinación recurrida. Así pues, al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* decidimos ejercer nuestra facultad revisora y entrar en los méritos del asunto ante nuestra consideración, puesto que esperar a la apelación constituiría un fracaso irremediable de la justicia. Nos explicamos.

Según expuesto, los peticionarios recurren de una resolución interlocutoria que dispuso que el asunto de la prescripción extintiva ya fue adjudicado en la *"Sentencia Parcial"* notificada el 5 de septiembre de 2025. Es la postura de los peticionarios que el foro primario no resolvió de manera final el asunto de la prescripción extintiva. Les asiste la razón.

Mediante la *"Sentencia Parcial"* el foro primario se expresó sobre varios escritos que estaban pendientes de adjudicación. En ese momento, el referido tribunal tuvo ante sí una *"Moción de Sentencia Sumaria,"* presentada por FirstBank; una "*Moción en Cumplimiento de Orden,"* presentada por Luna Residential; y la *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción,"* presentada por los peticionarios. Estas mociones dispositivas fueron denegadas por el tribunal de instancia. Únicamente, el referido foro adjudicó en sus méritos la reclamación sobre fraude entablada en contra de FirtsBank. En lo que aquí atañe, el foro recurrido expresó lo siguiente en torno a la solicitud de desestimación de los peticionarios: "[E[ntendemos que al momento **no estamos en posición de dilucidar la moción de desestimación presentada por la parte demandada**, toda vez que parte de las controversias aquí esbozadas son medulares para dictar una determinación al respecto." (Énfasis suplido).

Pese a la expresada abstención de adjudicación en sus méritos, el foro primario concluyó lo siguiente en la Vista del 22 de abril de 2026, según recogido en la *"Minuta"* notificada el 24 del mismo mes y año; citamos textualmente: **"El asunto está resuelto** y el término para recurrir ya transcurrió. Los demandados firmaron un pagaré **y determinado** que la

acción no está prescrita, permanece la responsabilidad de estos." (Énfasis suplido). El tribunal de instancia reafirmó las anteriores expresiones al denegar el petitorio de reconsideración de los peticionarios. En específico esbozó: **"El asunto fue atendido y adjudicado** en septiembre de 2025. Se emitió sentencia parcial y el término, en derecho, para solicitar reconsideraci[ó]n transcurrió, sin haber ejercido el derecho a la determinación del Tribunal." (Énfasis suplido).

En vista de ello, se hace necesario revocar la determinación interlocutoria objeto de revisión toda vez que el asunto de la prescripción no ha sido resuelto y el foro primario se abstuvo de atender en sus méritos la *"Moción en Reiteración de Solicitud de Desestimación de Demanda por Prescripción."* De manera que, la cuestión de la prescripción aún está pendiente de adjudicación y las partes tienen derecho a expresarse sobre la procedencia o no de esta defensa afirmativa.

Nótese, que la controversia ante nuestra consideración no trata sobre un asunto previamente adjudicado que tiene finalidad y firmeza. El dictamen revocatorio que hoy emitimos en nada afecta las determinaciones acogidas y que sí fueron resueltas por el foro recurrido en la *"Sentencia Parcial."* Nuestra intervención se circunscribe a revocar una resolución interlocutoria que contiene la adjudicación errónea de que el asunto de la prescripción ya fue resuelto.

**IV.**

Por los fundamentos que anteceden, al amparo de la Regla 52.1 de Procedimiento Civil, *supra* y de la Regla 40 nuestro Reglamento, *expedimos* y *revocamos* la determinación interlocutoria recurrida.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones